UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

NYDIA PEREZ,                              :

                Plaintiff,            :

        - against -                      :

JPMORGAN CHASE BANK, N.A.,                :

               Defendant.           :

------------------------------------------------------X

*ECF*

*07cv.8446 (LAP)*

**NOTICE OF REMOVAL**

New York County Clerk's
Index No. 111677/07

**TO: THE HONORABLE JUDGES OF THE
UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

PLEASE TAKE NOTICE that Defendant JPMorgan Chase Bank, N.A. ("JPMorgan"), hereby removes this action from the Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. §§ 1441 et seq., and states:

1.    On or about August 27, 2007, an action was commenced in the Supreme Court of the State of New York, County of New York, entitled <u>Nydia Perez v. JPMorgan Chase Bank, N.A.</u>, Index No. 111677/07.

2.    On information and belief, Plaintiff's Summons and Complaint were served by hand on JPMorgan on September 11, 2007.

3.    This case is a civil action over which this District Court has original jurisdiction pursuant to 28 U.S.C. § 1332 and is one which may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1441 et seq.

4.    The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. This action involves claims of damages allegedly sustained by Plaintiff as a

161198:v1

result of JPMorgan's alleged failure to accommodate her disability in connection with her employment at JPMorgan in violation of the New York State Human Rights Law, New York Executive Law § 296, and the New York City Human Rights Law, New York City Admin. Code § 8-107.

5. There exists complete diversity of citizenship between the parties. On information and belief, Plaintiff is, and was at the time this action was filed, a citizen of the State of New York.

6. JPMorgan Chase Bank, N.A., Plaintiff's employer and the proper Defendant herein, is a national banking association with its main office at 1111 Polaris Parkway, Columbus, Ohio 43240.

7. A copy of Plaintiff's Summons and Complaint is attached as Exhibit "A". No other pleadings have yet been served in this action.

8. In accordance with 28 U.S.C. § 1446(a), a copy of this Notice of Removal accompanied by written notice of filing shall be given to all parties and filed with the Clerk of the Supreme Court for the State of New York, County of New York, promptly after the filing of this Notice of Removal.

Dated: September 28, 2007

                                        JPMORGAN CHASE LEGAL AND
                                        COMPLIANCE DEPARTMENT

                                        By: _____
                                            Frederic L. Lieberman, Esq.
                                        Attorneys for Defendant
                                        One Chase Manhattan Plaza, 26th Floor
                                        New York, New York 10081
                                        (212) 552-1815

To:     Saul L. Glass, Esq.
       Law Offices of Saul L. Glass
       One Barker Avenue
       White Plains, New York 10601
       (914) 682-0257

       Attorneys for Plaintiff

Clerk of the Court
Supreme Court of the State of New York
County of New York
Clerk's Office
60 Centre Street
New York, New York 10007

# EXHIBIT A

EXHIBIT A

SUPREME COURT: NEW YORK COUNTY

NEW YORK COUNTY CLERK'S OFFICE

INDEX NO. 07- 111677

AUG 27 2007

NOT COMPARED WITH COPY ON FILE

Nydia Perez,

                Plaintiff,

-against-

JPMorgan Chase Bank, N.A.,

                Defendant.

Date Purchased:_____

Plaintiff designates New York County as the place of trial.

The bases of the venue are defendant's principal place of business, and where the causes of action arose.

**Summons**

Defendant's principal place of business is 270 Park Avenue, New York, New York 10017.

To: Defendant JPMorgan Chase Bank, N.A.

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' Attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: August 10, 2007
       New York, New York

LAW OFFICES OF SAUL L. GLASS

By: _____
    Saul L. Glass
Attorneys for Plaintiffs
One Barker Avenue Suite 425
White Plains, New York 10601
(914) 682-0257

NEW YORK CITY OFFICE

805 Third Avenue[1]
16th Floor
New York, New York 10022
(212) 355-8244

Defendant's Address: 270 Park Avenue
New York, New York 10017

---

[1] Please forward all pleadings and correspondence to White Plains.

SUPREME COURT: NEW YORK COUNTY

Nydia Perez,

                Plaintiff,

    -against-

JPMorgan Chase Bank, N.A.,

                Defendant.

INDEX NO. 07-

**COMPLAINT**

Plaintiff, Nydia Perez, by her attorney, Saul L. Glass, for her complaint herein, alleges, upon information and belief as follows:

## PARTIES

1.    At all relevant times herein plaintiff was and is a resident of the State of New York, residing at 168 Remsen Road, Yonkers, New York.

2.    Defendant JPMorgan Chase Bank, N.A. ("Chase") was and is a national banking association with a principal place of business at 270 Park Avenue in the City, County and State of New York.

## FACTS COMMON TO ALL CAUSES OF ACTION

3.    At all relevant times, Ms. Perez was employed by Chase.

4.    Ms. Perez began her banking career with Chase in 1972.

1

5. She left her employ with Chase in 1988, returning to Chemical Bank, a predecessor of Chase in December of 1989.

6. Prior to the actions complained of, Ms. Perez was a National Sales Manager (the "First Job") reporting to Clarence Mosley, Jr.

7. She was a full Vice-President and specialized in the Hispanic market as part of the Emerging Markets Group.

8. Ms. Perez was not primarily responsible for making sales of Chase products, rather she was responsible for: 1) referring business opportunities to other departments and colleagues; 2) raising the profile of Chase in the Hispanic community, by participating in seminars and conferences; 3) serving as a liaison to community and business leaders, and 4) supporting existing customer relationships.

9. Throughout her tenure at Chase, Ms. Perez received performance reviews which rated her as an excellent employee.

10. Ms. Perez suffers from the disability of severe arthritic conditions affecting her wrists and knees, which had become exacerbated by late 2004.

11. On October 11, 2004 Ms. Perez received a diagnosis of basal joint arthritis and knee arthritis from Dr. Stephen J. Nicholas of Scarsdale.

12. On October 12th, 2004 while wearing a splint, she submitted a memorandum advising Chase of her condition and attaching Dr. Nicholas' diagnosis.

13. Since that time, she has being diagnosed by Dr. Purcell, a hand surgeon, as having de Quervain's disease in her hands and wrists, and by Dr. Fay, an orthopedist, as having osteoarthritis in her knee.

14. Notwithstanding her disabilities, Ms. Perez was at all relevant items fully capable of performing the requirements of the First Job.

## CHASE TERMINATES MS. PEREZ' EMPLOYMENT IN A SUITABLE POSITION

15. On April 28th, 2005 while on vacation in Mexico, Ms. Perez called in to request additional vacation time.

16. An administrative assistant, Imelda P. Wyatt, told her that her department had been eliminated, and that the department manager, Clarence Mosley, had already obtained for himself a new position which he would start shortly.

## CHASE WITHDRAWS A SUITABLE POSITION AND OFFERS A PROBLEMATIC POSTION.

17. On Saturday May 7th 2005, Ms. Perez finally spoke with Mr. Mosley.

18. Mr. Mosley advised her that she would be able to apply for various positions throughout the bank, and that Ruth Salzman, S.V.P. Community Lending Division, would probably have a need for her expertise.

19. Inasmuch as the new position with Ms. Salzman was similar to her present position, Ms. Perez expressed an interest in learning more about the position.

20. On June 1, 2005 Ms. Perez had her interview with Ruth Salzman in regards to the new position of Business Consultant.

21. Despite her disability, Ms. Perez was fully capable of performing the job requirements of Business Consultant.

3

22. On June 7th 2005, Ms. Salzman's assistant, Stephen Franklin, telephoned Ms. Perez and requested that she meet with him the next week

23. They scheduled the meeting for Monday, June 13th at 4:00pm at 1CMP 5th floor.

24. On June 9th, Mr. Franklin left a message stating that he would have to re-schedule.

25. Ms. Perez responded by leaving him a list of dates on which she would be available. Mr. Franklin did not respond.

26. On June 20th, Ms. Perez telephoned him, only to be told that he had been told to cancel further interviews of Emerging Markets personnel.

27. Subsequently, Ms. Perez and other members of her group were advised that there were positions available for them with Steven Fiata, a Senior Vice President with Small Business Financial Services, and other members of his group.

28. Sometime between June 20th and June 22nd, 2005, Ms. Perez's colleague, Syderia Asberry advised Ms. Perez that she had spoken with Barbara Hart of Chase's Human Resources Department and that Ms. Hart had agreed that Ms. Perez's group would be better off in a Community Development position and not a sales position.

29. On or about July 1, 2005 in a conversation with Ruth Salzman, Ms. Salzman acknowledged that Community Development had been told to withdraw interest in Emerging Markets Group personnel as they had been promised positions with SBFS.

30. Ms. Patricia Cole, Mr. Mosley's assistant, to whom Ms. Perez was reporting in the interim, confirmed this.

4

31. On July 5, Ms. Cole advised Ms. Perez that a meeting with Mr. Fiata had been scheduled for July 15th.

32. At the meeting Mr. Fiata indicated that there were openings for small business relationship officers, team leaders, and direct sales officers.

33. These were essentially generic sales positions, and bore no relationship to Ms. Perez's experience and skills in working with the Hispanic market.

34. When Ms. Perez expressed an objection as this was dissimilar to her prior position, she was advised that these were the only positions available.

35. Mr. Fiata instructed Ms. Perez to contact Harrison Fisher, another officer in SBFS who is in charge of direct sales to new accounts to see if he could use her skills.

36. Ms. Perez agreed to contact Mr. Fisher.

37. On or about July 19th and July 20th, 2005 Ms. Perez learned that two colleagues who were also part of the Business Resource Group were offered severance packages.

38. At about the same time, Ms. Perez attempted to contact Ms. Fisher but never spoke with him directly.

39. Mr. Fisher did not get back to Ms. Perez for two weeks, and an interview was scheduled for August 8th.

40. A few days before the interview, Mr. Fisher cancelled the interview.

41. His office attempted to re-schedule for August 12th, but Ms. Perez had an operation scheduled for removal of an ovarian cyst on that day.

5

42.     Ms. Perez indicated that she would contact Mr. Fisher to set up an interview after her recuperation period.

43.     Ms. Perez' operation was subsequently re-scheduled for August 25th, so that an echocardiogram could be taken.

44.     On August 15th, Ms. Perez sent Ms. Cole an e-mail indicating that she would advise Chase of her adjourned date for surgery and recuperation period.

45.     Notwithstanding her September 1, 2005 operation to remove an ovarian cyst, Ms. Perez, had an interview with Harrison Fisher.

## CHASE RE-ASSIGNS MS. PEREZ TO A POSITION REQUIRING ACCOMMODATION.

46.     Mr. Fisher initially offered Ms. Perez a position as a Direct Sales Officer ("DSO"), a position that would require "cold calling," literally knocking on the doors of prospective customers.

47.     The position of DSO would entail customer visits, with heavy files, and the opening of new accounts, duties which were not part of her then current job description.

48.     In sum, Chase was transferring Ms. Perez from a position that was not burdensome in light of her disability to one that was.

49.     Mr. Fisher later withdrew this offer and indicated that Mr. Fiata had a position available as a Small Business Relationship Manager ("SBRM").

6

50. This position while less burdensome than the DSO, still entailed more physical effort than was required by her previous position, as it would require customer visits and the opening of new accounts.

51. Ms. Perez remained on short-term disability, with a wrist operation anticipated to alleviate her de Quervain's disease on October 6th. Pursuant to her doctor's orders, she was not able to return to employment until sometime after November 21, 2005.

52. Ms. Perez, by her attorney, requested accommodation in the form of access to a "black car" service to get to and from customer locations, so that a driver could assist her with her files and additional clerical support in regard to the set-up of the new accounts she generated.

53. Chase refused to discuss these accommodations with Ms. Perez and her counsel, despite receiving three letters dated September 15, 2005, October 28, 2005, and November 16, 2005 (the "Requests for Accommodation") which fully described and documented Ms. Perez's medical limitations and her need for assistance and accommodation.

54. In the Requests for Accommodation, Ms. Perez advised Chase that she suffered from, inter alia, bilateral osteoarthritis of the knees, basal joint arthritis and de Quervain's disease, affecting her hands and wrists.

55. Chase took no action in response to the Requests for Accommodation and communicated that its position that it would not entertain discussions on the subject of accommodation until Ms. Perez returned to work.

7

## CHASE FAILS TO PROVIDE THE REQUESTED ACCOMMODATION.

56.     On November 21, 2005 Ms. Perez met with Mr. Fiata and with Ms. Hart.

57.     Mr. Fiata formally offered Ms. Perez the position of SBRM.

58.     Ms. Perez explained her limitations to Mr. Fiata and Ms. Hart.

59.     Ms. Hart stated that she would set up a conference call to arrange for accommodations.

60.     Ms. Hart mentioned the possibility of utilizing voice recognition software and also setting up an expense account for transportation assistance.

61.     Ms. Perez returned to work as a Small Business Relationship Manager ("SBRM") in December, 2005.

62.     Prior to her acceptance of this position, Ms. Perez reminded Barbara Hart and Steve Fiata of her limitations and provided a letter from Dr. Purcell, dated November 14, outlining the limitations on repetitive wrist motion and digital motion.

63.     They assured her that this position would be "a test" and that Chase would provide technological backup and even bring in an outside company to assess her limitations and see how Chase could best assist Ms. Perez.

64.     On December 19, 2005 Ms. Perez sent Barbara Hart an e-mail advising that she was suffering pain in her knees as a result of driving to appointments and that she needed to take breaks when at the computer.

65.     Despite assurances that accommodation would be made for Ms. Perez' physical limitations, Chase failed to implement a voice-recognition system or any other

technology to remediate her difficulties with typing. With regard to the problem with her knees, Chase made no attempt to provide any transportation assistance.

## CHASE'S FAILURE TO ACCOMMODATE MS. PEREZ AGGRAVATES HER CONDITION.

66. On January 29, 2006 Ms. Perez sent Barbara Hart an e-mail, a copy of which is attached as Exhibit A.

67. In that message Ms. Perez made it abundantly clear that continued use of a computer keyboard was aggravating her DeQuervain's disease and basal joint arthritis, as per her treating physician.

68. Chase made no accommodation in response to the conditions described in Exhibit A.

69. As of January, 2006, Ms. Perez was capable of performing the requirement of he position as SBRM, subject to reasonable accommodation.

70. On March 27, 2006, Ms. Perez' physician, Dr. Purcell, issued a formal opinion letter in which he stated that Chase's failure to implement a voice-recognition system had aggravated Ms. Perez' condition. A copy of this letter is attached as Exhibit B..

71. Copies of this letter were forwarded to Ms. Hart, Chase Nurse Miriam Negron, and Mr. Frank Fogli, Ms. Perez' supervisor.

72. While Mr. Fogli expressed sympathy, Chase made no accommodation in light of the physician's opinion expressed in Exhibit B.

9

73.     On May 19, 2006 Mr. Fogli sent Ms. Perez an e-mail indicating that he had spoken with Barbara Hart within the week about the voice recognition software and that "she had not dropped the ball."

74.     While a "Kazi Khan" in Chase Retail Technology Operations was investigating the implementation of Dragon Naturally Speaking software in May and June of 2006, this effort came to naught.

75.     Chase's conduct with regard to Ms Perez is contradictory to the JPMorgan Chase employee manual at JPM 47.58 which states that the provision of "specialized equipment" is within the purview of reasonable accommodation that Chase provides.

76.     Ms. Perez continued to perform her job the best she could throughout the spring and summer of 2006.

77.     In June she was diagnosed as having plantar fascitis, and she so advised Chase.

78.     In July, she was diagnosed as having borderline carpal tunnel syndrome.

79.     During August of 2006 she underwent three sessions of shockwave therapy as treatment for the plantar fascitis.

80.     That same month, she met with Judith D. Bess of Chase's Employee Assistance Program to discuss Chase's failure to accommodate her needs.

81.     Chase never brought in an outside specialist to evaluate Ms. Perez' disability.

82.     Chase never implemented voice-recognition software.

83.     Chase never assigned an administrative assistant to Ms. Perez.

84.     As a result of the worsening of the condition of her hands and wrists, on September 20, 2006, Dr. Purcell again evaluated Ms. Perez and again found that the requirements of her job were worsening her condition (See Exhibit C).

85.     Ms. Perez forwarded Exhibit C to Chase on or about the same date.

86.     Ms. Perez went on short-term disability leave on September 28, 2006 due to the aggravation of her injuries by Chase's failure to accommodate her disability.

87.     Ms. Perez commenced a course of occupational therapy on or about September 28, 2006 to treat her hands and thumbs.

88.     Chase continued to pay Ms. Perez through and including December 29, 2006, when her pay was reduced.

89.     On January 26, 2007 Ms. Perez underwent a surgical procedure on her right thumb to redress the exacerbation of her injuries.

90.     She underwent the same procedure for her left thumb on March 2, 2007.

91.     Ms. Perez is currently out on long-term disability and cannot return to work at this time.

92.     Chase has advised Ms. Perez that it will fill Ms. Perez' position and that she will have to interview for a new position if and when she returns to work.

93.     Throughout Ms Perez' tenure as a SBRM, Chase failed to accommodate her disability, exacerbating her condition.

94.     Ms. Perez could have performed the functions of an SBRM but for Chase's failure to provide reasonable accommodation.

95.     Chase failed to engage in a dialogue with Ms. Perez as to the extent and nature of the reasonable accommodation she required.

96.     By the totality of its actions, Chase has constructively discharged Ms. Perez as a result of her disability, a disability its own conduct aggravated.

97.     The actions of Chase are outrageous and offend the public conscience.

### FIRST CAUSE OF ACTION

98.     Ms. Perez repeats and realleges the allegations contained in paragraphs 1 through 97 above.

99.     Chase has violated §296 of the Executive Law et seq, and Section 8-107 of the Administrative Code of the City of New York.

100.    As a result of Chase's violation, Ms. Perez' de Quervain's disease and osteoarthritis have been exacerbated, she has required additional treatment both surgical, and non-surgical, and she has undergone pain and suffering.

101.    The actions and non-actions of Chase in their totality are tantamount to a discharge of Ms. Perez in that she is unable to work as a consequence thereof and Chase has stated that it will place another employee in her position.

102.    By reason of the foregoing Ms. Perez has been damaged in an amount to be determined at trial but that is estimated to exceed the sum of five hundred thousand ($500,000) dollars.

## SECOND CAUSE OF ACTION

103.    Ms. Perez repeats and realleges the allegations contained in paragraphs 1 through 97, 100 and 101 above.

104.    The actions of Chase towards Ms. Perez were intentional.

105.    As a result of the actions of Chase, Ms. Perez has suffered from, and continues to suffer from, mental distress.

106.    By reason of the foregoing Ms. Perez has been damaged in an amount to be determined at trial but that is estimated to exceed the sum of five hundred thousand ($500,000) dollars.

**WHEREFORE**, Ms. Perez demands judgment as follows:

1.   On her first cause of action:

   a. for back pay from December 29, 2006, for front pay and

   b. for monetary compensatory damages for pain and suffering in an amount to be determined at trial but is estimated to exceed the sum of five hundred thousand ($500,000) dollars;

2.   On her second cause of action, for monetary compensatory damages in an amount to be determined at trial but is estimated to exceed the sum of five hundred thousand ($500,000) dollars;

3.   For punitive damages on her causes of action in the amount of five million ($5,000,000) dollars;

13

4.   For attorney's fees on her causes of action;

5.   For the costs and disbursements of this action; and

6.   For such other and further relief as to this Court may seem just and proper.

Dated: White Plains, New York
       August 10, 2007

LAW OFFICES OF SAUL L. GLASS

By: _____
    Saul L. Glass

Attorneys for Plaintiff
One Barker Avenue
White Plains, New York 10601
(914) 682-0257

805 Third Avenue[1]
16th Floor
New York, New York 10022
(212) 355-8244

FUJITSU/MD/SGLD/PEREZ EMPLOYMENT CHASE/COMPLAINT 8.10

---

[1] Please forward all pleadings and correspondence to White Plains.

14